UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RONAKKUMAR PATEL,<br><br>    Defendant | No. 26-CR-10099-MJJ-5 |

## REPLY TO THE DEFENDANT'S RESPONSE TO THE GOVERNMENT'S DISMISSAL OF THE INDICTMENT

On June 26, 2026, the United States filed a notice of intent to dismiss the indictment against the Defendant, Ronakkumar Patel, in light of the defendant's removal from the United States, seeking the Court's endorsement. On July 6, 2026, Defendant, through counsel, filed a "Response to Government's Dismissal of the Indictment" and requested that the dismissal be with prejudice. Dkt. 65 (the "Request"). The government hereby opposes the Defendant's Request. As set forth herein, the Defendant's removal from the United States was a permissible exercise of Executive Branch discretion and did not prejudice the Defendant. The government exercised good faith, and its actions were in line with the public interest. Accordingly, Defendant's request for an extraordinary and unwarranted remedy should be denied, and the indictment should be dismissed without prejudice.

## BACKGROUND

On March 11, 2026, the Defendant was charged by criminal complaint with Conspiracy to Commit Visa Fraud in violation of 18 U.S.C. § 371. Dkt. No. 4.

As set forth in more detail in the complaint affidavit ("Compl. Aff.") and indictment (Dkt. No. 32), the government's investigation revealed that Defendant and his co-conspirators

unlawfully conspired to commit visa fraud in order to fraudulently obtain U visas for themselves or others, make money, and conceal actions from law enforcement. The conspiracy involved arranging for staged armed robberies to be conducted at certain pre-determined business locations in Massachusetts; collecting thousands of dollars from individuals in exchange for providing them the opportunity to participate as purported victims in one of the staged armed robberies; paying store owners or managers for the use of their business locations to stage armed robberies; conducting and participating in staged armed robberies; falsely reporting armed robberies to police; submitting and causing to be submitted Forms 918-B to police departments, falsely claiming that victim co-conspirators were victims of actual crimes; submitting and causing to be submitted Forms 918 (U Visa applications) to USCIS falsely claiming that purported victim co-conspirators were victims of actual crimes; and retaining and sharing proceeds of these actions with co-conspirators who helped stage the armed robberies.

As set forth in the Comp. Aff. and Indictment, from about March 1, 2023 through about October 28, 2023, the Defendant and co-conspirators staged or participated in staged armed robberies in order to receive money and/or in order to submit fraudulent applications for U nonimmigration status (U visas), which are available to victims of certain crimes who have suffered mental or physical abuse and who have been helpful to law enforcement in the investigation or prosecution of criminal activity. The armed robberies were staged in pre-determined commercial business so that the employees and the civilians present during the robberies would seemingly qualify for U visa status. Some victims traveled from out of state to take part in the staged robberies and victims paid upwards of $10,000 to take part in the robberies. Store owners and/or employees were fully aware of the robberies and would notify members of the conspiracy when the store was empty so that the robbery could take place. For

each robbery, the owner or employee of the store was informed of an approximate date or time during which the robbery would occur and was told to limit the amount of cash kept in the register, and the victims were provided with instructions on how to impede and obstruct the police response to facilitate the escape of the co-conspirators. The Defendant specifically is alleged to have helped facilitate the involvement of his sister and another individual whose husband knew the defendant from a village in India in the scheme as purported "victims" of a staged armed robbery at Jimmy's Market & Liquors on September 11, 2023, so that they could submit fraudulent U visa applications.  Compl. Aff. ¶¶ 39-50.

The Defendant, after being charged by complaint, was arrested by FBI in Missouri on March 12, 2026. *See* March 16, 2026 Docket Entry.   On March 17, 2026, the Defendant had his initial appearance in Missouri and was then released on conditions. *See* Dkt. No. 24.  That same day, the Defendant was taken into ICE custody. On March 31, 2026, the defendant was scheduled for an initial appearance on the complaint via Zoom, and a writ of habeas corpus was issued to ICE to secure his appearance. Dkt. No. 26.  ICE facilitated the Defendant's appearance via Zoom on March 31. During the March 31 appearance, defense counsel requested a probable cause hearing, which was scheduled for April 10, 2026. *See* March 31, 2026 Docket Entry.   However, before the scheduled hearing, on April 7, 2026, the Defendant and his co-conspirators were indicted under a single indictment, obviating the need for such a hearing. Dkt. No. 32. Instead, the expectation was that the April 10 hearing would be converted to an arraignment hearing. ICE agreed to make the defendant available for that hearing.  However, due to the Defendant being in transit on the day and time of the hearing, ICE was unable to facilitate his attendance, and the arraignment was re-scheduled for April 16 with a habe issued for that date. Dkt. No. 35.

3

ICE made the Defendant available for the April 16 hearing, and Defendant appeared via Zoom for the arraignment hearing on April 16, 2026. Dkt. No. 45.  During the appearance, after private consultation with his counsel in a breakout room, the Defendant did not consent to waive his in-person appearance. *Id.*  In light of the Defendant's requested in-person hearing, the court set the arraignment for May 8, 2026, but indicated understanding that the date may be too soon to have him brought to Massachusetts and that the government may seek continuance if needed. *Id.*  Later, on May 5, 2026, the government reported to the Court that the Defendant had not been brought to Massachusetts, and ICE intended to deport the defendant if he was not in U.S. Marshals custody.  The May 8 arraignment was cancelled since the Defendant was not in the state. Dkt. No. 52.

On June 12, 2026, the Clerk notified the government that the ICE locator indicated the Defendant was in custody in Massachusetts, and the Court scheduled an in-person arraignment for June 30, 2026.  Dkt. No. 59.  However, the government learned later that day that the Defendant had been removed on May 15, 2026.  Accordingly, on June 23, 2026, the government filed a notice of dismissal and alerted the clerk that the June 30 arraignment could not proceed as to the Defendant.  Dkt. No. 63.  On July 6, 2026, the Defendant filed his Request seeking that the dismissal be entered with prejudice.  Dkt. No. 65.

## ARGUMENT

By requesting that the case against him be dismissed with prejudice, Defendant asks the Court to disregard settled law and take liberty with bedrock constitutional principles—an invitation the Court should reject. Dismissal with prejudice when the government has filed a notice under Rule 48(a) is reserved for rare cases in which a defendant carries his burden of showing that the government has acted in bad faith or for an improper purpose. Defendant has

4

failed to meet this burden, and his claims are without merit. Accordingly, the Court should enter an order dismissing the indictment *without* prejudice.

The law in the First Circuit is that Rule 48(a) dismissals are "customarily" without prejudice and "permit the government to reindict within the statute of limitations." *United States v. Raineri*, 42 F. 3d 36, 43 (1st Cir. 1994) (citing *United States v. Matta*, 937 F. 2d 567, 568 (11th Cir. 1991)). The government is entitled to the benefit of a presumption of good faith in its Rule 48(a) motion. *See United States v. Suazo*, 14 F. 4th 70, 73 (1st Cir. 2021) (noting that the district court applied such a presumption); *see also Rinaldi v. United States*, 434 U.S. 22, 30 & n.15 (1977) ("we will not presume[] bad faith on the part of the Government at the time it sought leave to dismiss the indictment against the petitioner"). In *Suazo*, the defendant argued in the district court that "given his lengthy pretrial detention and the government's admission that it could not prove its case, due process required an acquittal or dismissal with prejudice [under Rule 48(a)] rather than a dismissal without prejudice." 14 F. 4th at 72-73. The court disagreed and dismissed the case without prejudice, finding that the defendant had not rebutted the presumption of good faith. *Id*. at 73.  Other circuit courts also note that the default is dismissal without prejudice absent proof of bad faith by the government.[1]

---

[1] *See United States v. B. G. G.*, 53 F. 4th 1353, 1361-70 (11th Cir. 2022) (district court abused discretion in dismissing Information with prejudice under Rule 48(a) without finding that the motion to dismiss was filed in bad faith); *United States v. Oliver*, 950 F. 3d 556, 562 (8th Cir. 2020) (discussing binding precedent in that Circuit that "a dismissal pursuant to Rule 48(a) is without prejudice"); *United States v. Mujahid*, 491 F. App'x 859, 860 (9th Cir. 2012) ("A district court is 'duty bound' to grant the government's Rule 48(a) motion to dismiss an indictment without prejudice unless 'it specifically determines that the government is operating in bad faith' in pursuing the motion.") (citations omitted); *United States v. Ortega-Alvarez*, 506 F. 2d 455, 458 (2d Cir. 1974) ("when an indictment is dismissed before trial upon the government's motion under Rule 48(a) of the Federal Rules of Criminal Procedure, the dismissal is without prejudice to the government's right to reindict for the same offense, unless the contrary is expressly stated") (citations omitted); *United States v. Davis*, 487 F. 2d 112, 118 (5th Cir. 1973) ("the authorities are replete that such a dismissal is without prejudice").

Some courts have ordered dismissal with prejudice where there is evidence that granting a dismissal without prejudice would conflict with the public interest. *See United States v. Guimaraes*, No. 1:25-CR-10129-JEK, 2025 WL 1899046, at *4 (D. Mass. July 9, 2025). However, the "deportation of a defendant during a criminal prosecution typically does not warrant dismissal of the indictment with prejudice." *Id.*

This construction of Rule 48(a) dovetails with the principles that "the Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute," *Trump v. United States*, 603 U.S. 593, 620 (2024); that a prosecutor's "decisions receive a presumption of regularity," *Nieves v. Bartlett*, 587 U.S. 391, 400 (2019); and that agencies such as the U.S. Department of Homeland Security and ICE "are entitled to a presumption of regularity," *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 577 (2025).

The Supreme Court has stated that "[t]he principal object of the 'leave of court' requirement [in Rule 48(a)] is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi*, 434 U.S. at 30 & n.15; *see also Guimaraes*, 2025 WL 1899046, at *2 (stating that "the "leave of court" requirement in Rule 48(a) advances two objectives: (1) protecting defendants against prosecutorial harassment and (2) ensuring that any dismissal is not contrary to the public interest").

Here, the Defendant makes no argument that the government has acted in bad faith.  The Defendant, instead, argues that it would be against his rights and public interest to dismiss without prejudice. Dkt. 65 at 5. The Defendant further claims that "the public interest is not served by allowing the government to repeatedly initiate prosecutions only to promptly abandon

6

them after deporting the defendant." *Id.* To support this "abandonment" claim, the Defendant provides a list of 47 cases—cases distinguishable from the one here—that it deems part of "a pattern of conduct that invariably causes rights violations." *Id.* at 10. Moreover, the Defendant argues that upholding the discretionary power of the executive to pursue both prosecution and removal results in a waste of resources and is against the public interest. *Id.* As discussed below, these arguments do not have merit.

Defendant Cannot Show Rights Violation or Prejudice Against the Public Interest

The Defendant argues that the indictment should be dismissed with prejudice due to violations of his Fifth and Sixth Amendment Rights. Dkt. 65 at 6. The Defendant states that his time in ICE custody made him unable to consult with counsel, infringing his Sixth Amendment Rights. *Id.* However, as discussed above, the Defendant was able to meet with counsel at the time of his initial appearance in Missouri on March 17, at and before his March 31 remote appearance, at and before his remote April 16 appearance, and on an additional occasion outside of court as he attests in his Request. Moreover, ICE made the defendant available for his court appearances via Zoom on both March 31 and April 16, and agreed and took steps to make the Defendant available on April 10, before needing to transfer him. The online appearances, the private meetings with counsel, and the diligent efforts to make the Defendant available for Court even as he was transferred between facilities all demonstrate clear effort on the part of ICE to facilitate the Defendant's right to counsel, distinguishing this case from the one cited by the Defendant to justify a dismissal with prejudice. *See Guimaraes*, 2025 WL 1899046, at *1 (finding that the combination of the defendant's failing to appear in court proceedings and ICE's repeated violations of court orders justified a dismissal with prejudice).

7

Furthermore, now that the Defendant has been deported, Defense Counsel states that it is impossible to review discovery and mount a defense for the charges, infringing on the Defendant's Sixth Amendment Rights. Dkt. 65 at 6. This reasoning would apply if the government were seeking to continue to prosecute the defendant after his deportation, but that is not the case here. Promptly upon learning of the defendant's removal, the government sought to dismiss the indictment in the interest of justice and in protection of the defendant's rights. Dkt. 63. Courts in other districts have at times found it appropriate to dismiss with prejudice when the government sought to *continue prosecution* after the defendant has been removed or due to year-long delays—circumstances very different from the situation here.[2]

Moreover, in-district authority supports that deportation typically is not prejudicial to the defendant where the government has sought to dismiss charges following removal. *See United States v. Soto,* No. CR 25-10393-NMG, 2025 WL 3765004, at *1 (D. Mass. Dec. 29, 2025) (holding that a defendant is not prejudiced in preparing a defense where the government dismissed the indictment after the defendant was deported because he would be unable to participate meaningfully in his defense); *United States v. Alvarez Manzanares*, 25-cr-10097-BEM (D. Mass. Dec. 1, 2025) (allowing a dismissal without prejudice, rejecting the argument that deportation infringes on the defendant's Sixth Amendment rights); *see also United States v.*

---

[2] *See United States v. Castro-Guzman*, 2020 WL 3130395, at *3 (D. Ariz. May 11, 2020) (where the government sought to continue its prosecution of the defendant after he was removed and the defendant moved to dismiss with prejudice, the court stated that ICE's removal of a defendant will have consequences to the government's prosecution); *United States v. Ferreira-Chavez*, No. 1:20-CR-00145-BLW, 2021 WL 602822, at *2 (D. Idaho Feb. 12, 2021) (dismissing the case after finding that the government has made no action to obtain the defendant's presence in court after removal while still seeking to leave the prosecution open indefinitely); *United States v. Urizar Lopez*, 587 F. Supp. 3d 835, 843 (S.D. Iowa 2022) (dismissing the case with prejudice on the defendant's motion to dismiss, finding that that the languishing of the case for over three years violated the defendant's speedy trial rights).

*Garcia Brito*, No. 25-cr-40040-MRG (D. Mass. Jan. 28, 2026) (dismissing without prejudice following deportation of defendant); *see also United States v. Hereaux-Pena*, No. 25-cr-10312-JEK (D. Mass. Jan. 5, 2026) (same). This is the general sentiment because dismissals after deportation leave the defendant "no worse off than if he had not been indicted [at all]." *United States v. Castillo*, 537 F. Supp. 3d 120, 131 (D. Mass. 2021); *see United States v. Moller-Butcher*, 723 F.2d 189, 190-91 (1st Cir. 1983) (stating that "a defendant is not injured by the dismissal of an indictment without prejudice pursuant to Fed. R. Crim. P. 48(a)"); *see also United States v. Dume Chavez,* No. 25-cr-10206-RGS (D. Mass. Oct. 9, 2025) (dismissing without prejudice where the defendant was deported days after her indictment despite argument she would not have the opportunity to "clear her name"); *United States v. Quijosaca-Quijosaca*, No. 25-cr-10332-PBS (D. Mass. Oct. 1, 2025) (dismissing without prejudice, rejecting the argument of rights violations after the defendant had been deported). Accordingly, there is no need for the bludgeon of a dismissal with prejudice to redress a significant wrong.  The Defendant is not now in custody and will not face the charges in the indictment unless he returns to the United States and the government initiates prosecution again. Should that time ever come, it is reasonable for the Court to expect that his constitutional rights, including those under the Fifth and Sixth Amendments, will be scrupulously honored. No specific actions by the government have infringed upon his constitutional rights, and the government's prompt filing of a notice of dismissal of the indictment upon learning that the Defendant would no longer be available to meaningfully participate in his defense was a proper means to safeguard the Defendant's rights. The Court should endorse the dismissal without prejudice.

It is in the Public Interest to Permit Retrial

The Defendant further posits that a dismissal with prejudice is in the public interest because the government has made it a practice to "initiate prosecutions only to promptly abandon them after deporting the defendant." Dkt. 65 at 5. But the "abandonment" argument is simply another variation of attacking the Executive Branch's prerogative to prioritize deportation over prosecution in certain cases, a premise that has been roundly rejected in other circuits.[3] Likewise, in this district, the Court has held that the risk that a defendant will be removed by ICE before the conclusion of their prosecution "is not barred by the BRA or any intersection with the INA." *United States v. Alzerei*, No. CR 19-10124-DJC, 2019 WL 2642824, at *3 (D. Mass. June 27, 2019).

The Defendant, despite this precedent, in order to argue for the extraordinary remedy of dismissal with prejudice, relies upon *United States v. Escobedo-Molina,* an out-of-district district court case in which the court found the case to be one in an "enormous series" in which the government was routinely charging individuals crossing the border illegally with two misdemeanors, but then making no effort to secure their presence in the country or district for trial, thus justifying dismissal with prejudice. 790 F.Supp.3d 1283, 1291-1292 (D.N.M. 2025) (citing a pattern of "casual disregard for constitutional and statutory rights" that persisted despite warnings from the court). In stark contrast to that case, the government in this case made diligent

---

[3] Numerous circuits have held that ICE has authority to detain and remove federally indicted defendants regardless of the pendency of the federal criminal case and irrespective of release determinations made under the BRA. *See United States v. Baltazar-Sebastian*, 990 F. 3d 939, 944-47 (5th Cir. 2021); *United States v. Barrera-Landa*, 964 F. 3d 912, 918-23 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F. 3d 950, 952-54 (8th Cir. 2020); *United States v. Lett,* 944 F. 3d 467, 470-473 (2d Cir. 2019); *United States v. Soriano Nunez*, 928 F. 3d 240, 244-47 (3d Cir. 2019); *United States v. Vasquez-Benitez,* 919 F.3d 552, 554 (D.C. Cir. 2019); *United States v. Veloz-Alonso*, 910 F. 3d 266, 268-70 (6th Cir. 2018).

efforts to update the Court and defense counsel about the location of the defendant even as he was being moved between ICE facilities, to make him available for Zoom proceedings and conferences with counsel in connection with those, to make arrangements for in-person proceedings, and to keep the Court and defense counsel apprised of his immigration status and ICE's intentions with respect to him.  Promptly upon learning about his deportation, the government sought to dismiss the charges.  Moreover, the government's historical and present intention to prosecute this case fully is further exemplified in the fact that the government has continued to fully prosecute the Defendant's co-conspirators who remain in the United States (*see* Dkt. Nos. 26-cr-10096 through -10099; Dkt. No. 26-cr-40020), including most recently facilitating the in-person appearance of a defendant who had been arrested out-of-state and remains in ICE custody, but was transferred to Massachusetts to facilitate his appearance in Court. *United States v. Rameshbhai Patel,* Dkt. No. 26-cr-10098 (D. Mass.).

Ignoring this clear evidence of governmental effort and intent to prosecute *this* case, the Defendant lists 47 cases he claims involve "similarly-situated defendants" to argue that an *Escobedo*-like pattern exists of the government abridging rights by utilizing deportations within criminal prosecutions. Dkt. 65 at 9.  However, those defendants were not similarly situated.  In fact, in 40 of the 47 cases listed, the defendant was charged only with "Unlawful Reentry of Deported Alien"; the Executive Branch in those cases executed its discretionary power of the Executive Branch to prioritize removal over prosecution for individuals who had previously been removed.  *See Trump v. United States*, 603 U.S. at 620 ("[T]he Executive Branch has 'exclusive authority and absolute discretion' to decide which crimes to investigate and prosecute") (citing *United States v. Nixon*, 418 U.S. 683, 703 (1974)).  That is a very different situation than the one

11

here, where a defendant subject to a final order of removal but not previously removed is charged with committing a separate, substantive criminal offense.

Moreover, the Defendant suggests that prosecution was a waste of resources and that a dismissal with prejudice would "force the executive branch to choose between its competing priorities." Dkt. 65 at 10. Under no reasonable view of the law should the mere exercise of executive discretion and legitimate prerogatives under different statutes by different agencies of the Executive Branch regarding different defendants be construed as a waste of resources. Were the Court to rule otherwise, as Defendant would have it, it would effectively be ordering the Executive Branch to choose between bringing a criminal prosecution and removal, which it may not do. *Lett*, 944 F. 3d at 471. Here, the government exercised its discretion judiciously, and is continuing to prosecute rather than remove 9 of the 10 defendants who were arrested in connection with this scheme in March 2026, even as none of them have legal status in the United States. Furthermore, given the DOJ's investment of resources in this case, the seriousness of the alleged conduct, and the work gone into securing an indictment, it is squarely in the public interest that the government be allowed to seek reinstatement of the charges against the Defendant in the future were he to illegally return to the United States after his removal.

Separately, the deterrent value that the potential reinstatement of this prosecution provides against Defendant's unlawful return, however marginal it may be, shows that the prosecution – and the ability to reinstate the prosecution in the future – is in the public's interest. The public maintains an interest in the investigation and prosecution of criminal activities, *see Maine v. Moulton*, 474 U.S.159, 180 (1985), a principle that weighs in favor of a dismissal without prejudice.

12

## CONCLUSION

Under the circumstances of this case, in which Defendant does not allege any prosecutorial misconduct or bad faith, cannot point to any material prejudice or rights violations, and cannot show that prosecution was not in the public interest, the Court should exercise its supervisory powers "with restraint and circumspection," *United States v. Horn*, 29 F. 3d 754, 760 (1st Cir. 1994), and dismiss the indictment without prejudice.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

 */s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney

Date: July 20, 2026